ELMER COFFMAN v. S. B. FLEMING, Appellant.

Division Two, December 3, 1923.

1. **SALES: Part Payment: Check: Question for Jury.** A check may be received in part payment for the purchase price of goods sold, but whether it was so received and accepted by the seller is a question of fact, to be determined by the jury like any other question of fact. A check is not money, but it may be received and accepted as money, and although it may not be presented to the bank and the money for which it calls received by the seller, and may be tendered back to the buyer without such presentation, the

question still remains whether it was received and accepted by the seller as part payment of the agreed purchase price of the goods sold and agreed to be delivered.

2. ———: ———: ———: ———: **Statute of Frauds.** Plaintiff sues defendant for damages for a breach of an oral contract to deliver hogs at an agreed price in excess of $800, to be delivered within a designated time. At the time the contract was made plaintiff asked defendant if he wanted any money, and receiving an affirmative answer wrote a check for fifty dollars, which defendant took, but tendered back to plaintiff before the agreed date of the delivery of the hogs. Plaintiff refused to take back the check, and at the time it was tendered back defendant had already sold the hogs to a third party. Defendant did not cash the check, but at the time it was delivered to him and at all times thereafter plaintiff had sufficient money in the bank to pay it. Defendant's only defense is that the check was not part payment of the agreed purchase price of the hogs, and therefore the contract was not binding under the Statute of Frauds. *Held*, that, while the check was not money, a check may be received and accepted as payment, or as part payment, of the agreed purchase price of goods sold, and whether the check was received and accepted by defendant as part payment for the hogs was a question of fact, to be determined like any other question of fact, from the evidence of what was said and done at the time the contract was entered into and the check delivered to the seller; and the case having been submitted to the jury upon faultless instructions requiring them to find that the check was accepted by defendant as money and as a part payment, the decision of the Court of Appeals affirming a judgment for plaintiff was not in conflict with Groomer v. McMillan, 143 Mo. App. 612.

Transferred from Springfield Court of Appeals.

JUDGMENT OF CIRCUIT COURT AFFIRMED.

*Don O. Vernon* and *A. W. Curry* for appellant.

(1) A check is not payment unless there is a special agreement that it shall be so. There was no agreement that the check was to be received as money. Groomer v. McMillan, 143 Mo. App. 612; Gay v. Sundquist, 175 N. W. 190; Ballard v. Bank, 195 S. W. 559; Armstrong v. Bank, 195 S. W. 562; Bates v. Dwinnell, 164 N. W. 722. (2) A

Coffman v. Fleming.

check to be payment must be received as such by express agreement that it shall be so received. Defendant's instructions correctly stated this principle and should have been given. Cases cited above; Wedmore v. McInnes, 69 Pa. Super. Ct. 220. (3) There was no evidence of an agreement to receive the check as part payment and this question should not have been submitted to the jury. An agreement to receive the check as part payment was absolutely essential. There was not the least evidence of such an agreement.

*Phil M. Donnelly* and *L. C. Mayfield* for respondent.

(1) The act of giving a check drawn on funds in a bank is a good part payment. 20 Cyc. 252; Logan v. Carroll, 72 Mo. App. 613; McClure v. Sherman, 70 Fed. 190; Groomer v. McMillan, 143 Mo. App. 615. (2) It was a question of fact for the jury to say whether or not the check was given as a part payment.

RAILEY, C.—Plaintiff sued defendant in the Circuit Court of Laclede County, Missouri, alleging in his petition, the breach of an oral contract to deliver a certain number of hogs, of a certain weight, on June 1, 1919. Defendant plead the Statute of Frauds, alleging that the check given by plaintiff for $50 was not part payment for the hogs. Plaintiff recovered a judgment for $200 and costs. Defendant appealed from said judgment to the Springfield Court of Appeals. The latter affirmed the judgment, in an opinion by BRADLEY, J., in which the other judges concurred.

Judge BRADLEY's opinion is published in full in 226 S. W. 67 et seq. We have carefully examined the same, as well as that of the Kansas City Court of Appeals, entitled Groomer v. McMillan, 143 Mo. App. 612, with which it is said to be in conflict. We have likewise read with much interest many other authorities in this State dealing with the same general subject. Upon a full consideration of the matters before us, we have reached the conclusion that

Judge BRADLEY's opinion contains a fair statement of the facts, and announces correct principles of law in dealing with the case in hand. We accordingly adopt the opinion of the Springfield Court of Appeals, as the opinion of this court, as follows:

"Plaintiff alleged that he purchased from defendant thirty-five head of hogs, to weigh 160 pounds per head, at $16 per hundred pounds; that he gave in part payment his check for $50, and that defendant accepted said check, and agreed that it would constitute a part payment on the purchase price of said hogs, and that the hogs were to be delivered in fifty or sixty days, at plaintiff's option; that defendant failed to deliver said hogs, and sold them to other parties, to plaintiff's damage. Defendant answered that he did not agree to accept the $50 check as part payment, and that the sale was within the Statute of Frauds. The issues were submitted to a jury, and verdict and judgment went for plaintiff, and defendant appealed.

"1. The main point that is briefed by defendant is that the check was not accepted by him as a payment on the purchase price. If the check was accepted as part payment on the purchase, then the transaction was taken out of the statute. [Logan v. Carroll, 72 Mo. App. 613; Groomer v. McMillan, 143 Mo. App. 612, 128 S. W. 285; Ballard v. Bank, 195 S. W. 559.] Plaintiff gave this version of the transaction:

" 'I was sitting up there on that rock in front of Mc-Millan & Millsap's drug store, and Mr. Fleming came along and asked me about some hogs; and I asked him about the hogs, and he said that he didn't want to sell them now; he wanted to contract them; and I asked him, 'When?' and he said, 'fifty or sixty days'; and I said, 'How much do you want for them?' and he said, Sixteen and a half cents;' and I said I would rather not contract for them; and he said I wasn't game, or I would try to buy his hogs; and finally I bid him sixteen cents on the hogs. I said that I would take a chance at them for sixteen cents, and he said that he would not do it, and he went

on down the street a little ways, and then came back and slapped me on the shoulder and said, 'Are you going to give me sixteen and a half for the hogs?' and I said, 'No,' and he said that he would take a quarter for them, and I said I had rather not buy them, and he said, 'I am going to sell them to you for sixteen cents;' and I says, 'All right;' and I said, 'We will use Mr. Haggard and Mr. Millsap and Mr. Jeffries for witnesses;' and I asked him if he wanted any money, and he said that he did, and I sat down and wrote him a check for $50, and those hogs were to weigh .160 pounds and up, and I gave him the check, and he went on down the street.

"'Q. When you gave him the check what did he say? A. He says, 'It takes money to make a trade.' or, 'Money is what counts'—one or the other, and I wouldn't positively say what it was.

"'Q. When you asked him if he wanted money on the contract, he said that he did? A. Yes, sir.

"'Q. Then that is when you wrote him the check? A. Yes, sir.'

"The record discloses that plaintiff at all times had the money in the bank on which the check was drawn to pay said check, and there is no dispute about this fact. The hogs were to be delivered in fifty or sixty days, and about the time for delivery plaintiff asked about the hogs; but defendant had already sold them to another, which fact plaintiff knew. Defendant did not cash the check, but in two or three weeks after the transaction tendered it back to plaintiff, and plaintiff refused to take it.

"J. E. Millsap, a witness for plaintiff, and who was present at the time plaintiff bought the hogs, testified that when the deal was made plaintiff asked defendant if he wanted any money on the deal, and that defendant said that he did, and that plaintiff said, 'All right; I will give you a check for $50;' and that plaintiff wrote the check and handed it to defendant, and that defendant took it and said, 'It takes money to make a trade.'

"R. G. Haggard was present when plaintiff bought the hogs, and testified that plaintiff asked defendant if he

wanted any money, and that defendant said, 'Well, money is what talks, or counts,' and that plaintiff wrote a check for $50, and defendant took it.

"Plaintiff called defendant as a witness, but the question as to whether defendant accepted the check as a part payment was not gone into. The evidence of defendant, testifying as a witness for plaintiff, concerned principally the weight of the hogs, and when and to whom he sold them after the transaction with plaintiff. Defendant offered no evidence to sustain his defense, but asked for an instruction in the nature of a demurrer, which was refused.

"On these facts the court submitted the case to the jury. Defendant asked, and the court refused, two instructions. The only difference that we can discover in the instructions given for plaintiff and refused for defendant, so far as defendant's contentions are concerned, is that defendant's instructions are perhaps more definite. Plaintiff's instruction required the finding that the check was accepted as money and as a part payment. Defendant's instructions are more definite than the one given, but we think that the necessary requirements are included in the one given.

"In Groomer v. McMillan, supra, plaintiff sued for damages on account of a breach of contract for sale of cattle. The contract was within the Statute of Frauds. Plaintiff claimed that he had made a payment at the time of making the contract by giving the defendant a check for $100. The account of the transaction as given by the plaintiff appears in the opinion as follows:

" 'I came back to where he (defendant) was plowing corn, and told him I would take the cattle, and would state the contract over, so there would be no mistake. I was to have the cattle at my request the last half of September, any time I call for them after t e 15th. They were to be driven to Mr. John Graham's and weighed, at $4 per hundred, the shrink to be three per cent. He (defendant) said, "Yes." I wanted to know if a check for $100 would be money enough, and he said it would. I

wrote him out a check for $100, and put on the check, "For 20 steers." I asked him if that check was all right, and he said it was. Then I turned back and come home.'

"The defendant in that case kept the check for several weeks, and, finding that he and the plaintiff were at a misunderstanding as to the obligations of the contract, tore it up in the plaintiff's presence. The court, in passing on the question, said:

"'In our opinion this evidence did not show a payment. The law is that the payment, to be effective in avoidance of the Statute of Frauds, must be an absolute payment; but it need not be in money. The buyer's check for the money will suffice, if it is received by the seller and agreed that it is an absolute payment; and this must be clearly established. For: "Nothing is better settled than that a check is not payment, but is only so when the cash is received on it. There is no presumption that a creditor takes a check in payment, arising from the mere fact that he accepts it from his debtor. The presumption is just the contrary. Where payment is made by check drawn by a debtor on his bank, this is merely a mode of making a cash payment, and not giving or accepting a security. Such payment is only conditional, or a means of obtaining the money. In one sense the holder of the check becomes the agent of the drawer to collect the money on it; and if it is dishonored there is no accord and satisfaction of the debt." [National Bank v. Ry. Co., 44 Minn. 224.] Accepting a check is not an agreement that it is itself a payment of the money named therein. In Johnson-Brinkman Co. v. Bank, 116 Mo. 558, 570, it is stated that: "A check on a bank is not payment, unless by express contract it is so received, and is only payment when the money is received on it; and that there is no presumption that a creditor takes a check in absolute payment arising from the mere fact that he accepts it from his debtor, is well settled law, there is no question." To the same effect is Barton v. Hunter, 59 Mo. App. 610; Hall & Robinson v. Railway Co., 50 Mo. App. 179, 183; Benjamin on Sales, secs. 729-731.'

"The court further held that the burden was upon the plaintiff to clearly show that it was expressly agreed that the check was an absolute payment and discharge of the price of the cattle *pro tanto*, and that the acceptance of the check and holding it, the plaintiff sustaining no loss, did not tend to establish an agreement that the check was accepted as part payment. The opinion does not state directly that such facts did not tend to prove that the defendant in fact accepted the check as part payment, but it in effect so holds. The court in that case was construing the statute. [Sec. 2784, R. S. 1909.]

"In Ballard v. Bank, supra, this court, in discussing the question as to when title passed, held that a check on a bank is not payment, unless by contract it is so received, and is only payment when the money is received on it, and that there is no presumption that a creditor takes a check in absolute payment arising from the mere fact that he accepts it from the debtor; that in law the contrary presumption obtains. In the note to Bates v. Dwinell, L. R. A. 1918B, 900, a number of authorities are collected on the question in hand, and are in accord with the law as written in Groomer v. McMillan, supra, in so far as the statement of the law is concerned. All the authorities agree that a check may be received in payment, or in part payment, in such cases as the one at bar; hence as to whether the check plaintiff gave defendant was received and accepted by him as part payment is a question of fact, and we think the court was right in submitting the question to the jury. When men are dealing, as were plaintiff and defendant, neither versed in the law, the question as to whether a check given under such circumstances was accepted as a 'part payment,' as these words are understood in law, ought to be determined like any other fact. An agreement or contract may be established by facts and circumstances, and we are of the opinion that the facts and circumstances in evidence in the case at bar tended to show that defendant accepted the check as an absolute payment *pro tanto*, and, if he did so accept it, then he agreed to accept it as part payment. We see no other way to reason the matter.

"The judgment is affirmed."

The statute relied upon as a defense, is Section 2170, Revised Statutes 1919, which reads as follows:

"No contract for the sale of goods, wares and merchandise for the price of thirty dollars or upward, shall be allowed to be good, unless the buyer shall  .  .  .  give something in earnest to bind the bargain, or in part payment."

The plaintiff had the money in the bank with which to pay the $50 check, and it would have been paid had the defendant presented the same. There is nothing in the record to indicate that defendant had any doubt of plaintiff's solvency at the time the deal was made. In view of that which took place between the parties when the $50 check was delivered, we are of the opinion, that it was the peculiar province of the jury to weigh the evidence, and determine therefrom whether said check was given by plaintiff as part payment for the hogs, and accepted by defendant in the same manner. The jurors were properly instructed upon this issue, and found for plaintiff.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.